**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CRISPINIANA DOMINGO**, | ) | |
| | ) | |
| Plaintiff, | ) | 18-CV-4653 |
| | ) | |
| vs. | ) | Hon. Judge Martha Pacold |
| | ) | |
| **JUSTIN WOODEN** and | ) | Hon. Magistrate Beth W. Jantz |
| University of Illinois at Chicago | ) | |
| Police Department Officer, and | ) | |
| **ERICA WILLIAMS**, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT**

The Plaintiff, Crispiniana Domingo, by and through her attorneys, Dvorak Law Offices, LLC, hereby responds to the Defendants' Motion for Summary Judgement as follows:

**,STATEMENT OF FACTS TAKEN IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF**

On May 14, 2016 Defendant Erica Williams was working as a Patient Unit Clerk at the University of Illinois at Chicago Hospital ("UICH," "UIC" or "the Hospital"); she has no medical training (SOF ¶ 6; Plaintiff's Statement of Additional Material Facts ("SAMF") ¶ 1). The Plaintiff, Crispiniana Domingo, has been a licensed nurse since 1986, and has worked for UICH for 16 years (SOF ¶ 1; SAMF ¶ 2). Infant, an 8-month-old child at the time of this incident and the alleged victim in the underlying case, was a medically complex child who was born premature and suffered from short-gut syndrome, which caused him to be developmentally slower in terms of his physical health, and Infant's complex medical history also caused him to be particularly susceptible to bone fractures (SAMF ¶ 3, 14, 17, 22-28).

1

On May 24, 2016, Defendant Officer Justin Wooden was informed of the allegations against the Plaintiff; specifically, that Infant was discovered to have a fractured arm 48 hours after Defendant Williams alleged the Plaintiff slapped Infant 10 days earlier (SAMF ¶ 5). Defendant Williams told Officer Wooden that she heard Infant crying, and when she went to check on Infant, she saw the Plaintiff "slap" Infant with her left, open hand on the back of the head, approximately three times while holding Infant in her right arm (SAMF ¶ 7). She later clarified at her deposition that the Plaintiff was holding Infant in front of her chest when this occurred (SAMF ¶ 7). The Plaintiff was later interviewed by Officer Wooden, and she told him that she went into Infant's room when the side of his crib slipped, creating loud crashing sound, startling the baby and causing him to cry, and she then attempted to comfort the baby by patting him on the back of the head; and at this time, Defendant Williams came to the room to give her a medical ID bracelet (SAMF ¶¶ 9, 10, 31).

On May 26, 2016, Officer Wooden reviewed the videotape from the Fifth Floor Pediatric Unit at UIC Hospital from 8:30 p.m. to 9:30 p.m. on May 14, 2016, the night and time of the alleged incident (SAMF ¶ 8). The video that Officer Wooden reviewed shows Defendant Williams retrieving a medical ID wristband from the tube system to give to the Plaintiff from the tube station just prior to going to Infant's room, which was confirmed by both the Plaintiff and Defendant Williams in their depositions (SAMF ¶¶ 9, 10).

Officer Wooden investigated Infant's arm injury. On May 27, 2016, Officer Wooden learned from Dr. Thomas Anderson, a neurologist, that the most likely cause of Infant's fractured arm was "someone grabbing the arm, whether inadvertent or deliberate, in combination with some twisting type motion" and that in a child who is medically complex like [Infant], very little force would be needed for the injury to occur." (SAMF ¶ 14). Dr. Anderson also noted that there

were no other signs of abuse on Infant (SAMF ¶ 14).  However, Defendant Williams never told Officer Wooden that she witnessed the Plaintiff twisting Infant's arm at any time during her initial interview or any time thereafter (SAMF ¶ 6).  Officer Wooden also knew that whatever or whomever caused the injury to Infant's arm, the arm injury was not noted by the Plaintiff that night, nor the nurse who took over her shift the next day (SAMF ¶ 15), nor was it noted by a doctor who treated Infant the morning after the alleged incident (SAMF ¶ 21).

Officer Wooden also learned Infant had an internal head injury.  An MRI of Infant's head was performed on May 27, 2016 and Officer Wooden learned from Rhonda Perna, UIC Director of Risk Management, that two small bi-lateral, frontal subdural hematomas were discovered (SAMF ¶ 16).  On May 31, 2016, Officer Wooden spoke with Dr. Rossini, Infant's primary care physician, who noted that the hematomas were not acute and there were no signs of recital hemorrhages, which are indicative of abusive head trauma (SAMF ¶17).  On June 6, 2016, Officer Wooden interviewed Dr. Saran, who had examined Infant's brain scans; Dr. Saran told Officer Wooden that the two hematomas were of different ages, and she was unable to determine when exactly they had occurred (SAMF ¶ 18). Dr. Saran also noted that there was a possibility that the hematomas had been present on Infant's last brain imaging from December 2, 2015 but were too small to see at the time (SAMF ¶ 18).  Drs. Anderson and Saran both told Officer Wooden that there were no typical signs of abuse on Infant (SAMF ¶ 19).  On June 14, 2016, Officer Wooden then spoke with Dr. Amanda Fingarson, a child abuse pediatrician who had been hired by the University of Illinois Hospital Board to independently review Infant's medical records in connection with the UICH internal investigation of the allegations; she provided Officer Wooden with a preliminary opinion of the causation of the injuries, including that the fracture required a twisting motion and that "she was almost certain the two hematomas pre-

3

dated hospitalization." (SAMF ¶ 20). In her later written report, which was reviewed by Officer Wooden, Dr. Fingarson indicated that it was inconclusive in regard to a finding of abuse and indicated she was specifically unable to link any findings to the Plaintiff's actions (SAMF ¶¶ 22-28). Dr. Fingarson's report also indicated that after reviewing Infant's medical records from prior hospital visits, Infant had signs of head trauma from birth which is not uncommon in premature babies such as Infant (SAMF ¶¶ 25-26, 28).

On July 5, 2016 Officer Wooden met with the Plaintiff at the UIC police station (SAMF ¶ 29). During the Plaintiff's interview, she explained, "while attempting to lower the rail [on Infant's crib], the rail slipped, causing it to fall, which created a loud noise. Domingo stated that the noise caused [Infant] to cry, so she picked him up from the crib and attempted to comfort him by 'patting' him on the back of his head." (SAMF ¶ 31). Officer Wooden arrested the Plaintiff on July 6, 2016 and charged her with two counts of aggravated battery to a child, one based on great bodily harm and the other based on bodily harm (SAMF ¶ 33). On July 7, 2016, the Plaintiff was brought to bond court on those felony aggravated battery charges, where her bail had been set at $300,000(D) (requiring her to post 10 percent of the bond, or $30,000) (SAMF ¶ 34). Had the Plaintiff's bond been a typical misdemeanor bond amount for simple battery, the Plaintiff could have bonded out the day of the bond hearing; however, it took until July 12, 2016 for her friends and family to come up with the requisite $30,000 to be released from Jail (SAMF ¶¶ 35-36). Officer Wooden then caused these same felony charges to continue by providing knowing, false testimony to the grand jury.[1] Specifically, on July 20, 2016 Officer Wooden testified to the grand jury, under oath, and gave the following testimony:

---

[1] In Illinois, a felony charge cannot proceed to trial unless there is an initial finding of probable cause at a preliminary hearing (or there is a waiver of such a hearing), or where, as here, a grand jury issues a grand jury indictment. 725 ILCS 5/111-1, et. seq. (West 2019).

4

> There was nothing else that could explain how it was the baby broke his arm and also sustained trauma to his head besides the actions of nurse Crispiniana Domingo that night (SAMF ¶ 37).

On February 26, 2018, just before trial, the State amended the felony aggravated battery charges to a misdemeanor battery charge, and she was then acquitted of that charge (SAMF ¶ 38).

## LEGAL STANDARD

Summary judgment is appropriate only if the materials in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party is entitled to such a judgment only if, based on the evidence in the record, no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52, 255 (1986). When ruling on the motion, a court must view all evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Ultimately, the party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact, and that summary judgment is required as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

**I. Officer Wooden's motion for summary judgment on the Plaintiff's false arrest claim should be denied because he waived his probable cause argument, or alternatively, a reasonable trier of fact could conclude Officer Wooden did not have probable cause to arrest the Plaintiff.**

Officer Wooden is not entitled to judgment as a matter of law on the Plaintiff's Section 1983 false arrest claim. Officer Wooden claims this Court must, as a matter of law, enter judgment in his favor because he allegedly had probable cause to arrest the Plaintiff (Def. Mem. 6-8). Officer Wooden claims there was probable cause to arrest the Plaintiff for "a crime," but he never specifies what crime the Plaintiff allegedly committed. *Id*. As the movant in a

5

summary judgment motion, the Plaintiff has the burden to prove there was probable cause as a matter of law. *Celotex*, 477 U.S. at 323. Yet, the Defendant does not even specify the crime for which he had probable cause to arrest the Plaintiff. Thus, Officer Wooden's probable cause argument is nothing more than a "skeletal argument" and thus should be deemed waived. *Nieves v. Berryhill*, 2018 U.S. Dist. LEXIS 66737, at *12-13 (N.D. Ill. April 20, 2018) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). An argument that probable cause exists for a "crime" is the equivalent of making no argument whatsoever, since whether an officer is authorized to make an arrest ordinarily depends on how the state defines the crime at issue. *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001).

Alternatively, if forced to guess, the Plaintiff will speculate that the crime at issue is misdemeanor battery, a Class A misdemeanor (720 ILCS 5/12-3(a)), since this is the lesser of the possible charges. This misdemeanor was not the actual charge that formed the basis of the Plaintiff's arrest, but probable cause need not be based on the actual charge. *Devenpeck v. Alford*, 543 U.S. 146 (2004). In Illinois, "A person commits battery if he or she knowingly, without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 2019).

First, a reasonable officer in Officer Wooden's position would have had reasons to seriously doubt the credibility of Defendant Williams' version of events. Before making an arrest, an officer must assess the credibility of a victim or witness, especially in light of other undisputed evidence, such as the existence of a video. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011); *Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986); *Fitzpatrick v. City of Fort Wayne*, 1:07-CV-259-RBC, 2009 U.S. Dist. LEXIS 22483, at *21 (N.D. Ind. March 19,

6

2009); *Baptise v. J.C. Penny Co.*, 147 F.3d 1252, 1257 n. 8, 1259 (10th Cir. 1998). When an officer learns of new facts that call into doubt the original basis of the investigation, officers are required "to reevaluate the reasonableness of [the] original probable cause determination." *Overton v. Hicks*, 1:06-cv-1513-DFH-JMS, 2008 U.S. Dist. LEXIS 47186, at *31 (S.D. Ind. June 17, 2008) (citing *BeVier*, 806 F.2d at 128). A jury is entitled to find that a reasonable officer would have concluded the video evidence and other witness accounts supported the Plaintiff's version of events over the version given by Defendant Williams. The Plaintiff told Officer Wooden that Infant began crying when the side of his crib slipped, and that Defendant Williams came to the room to give her a medical ID bracelet, and this was confirmed by Carey's version of events as well as the video evidence (SAMF ¶¶ 9, 10, 12, 31).

Alternatively, even if a reasonable officer was entitled to rely on Defendant Williams' claim that the Plaintiff "slapped" Infant on the back of the head three times, this still would not amount to probable cause to believe the Plaintiff *knowingly* caused bodily harm or *knowingly* made contacting of an insulting or provoking nature. Officer Wooden finds significance in the fact that the Plaintiff told him that she "patted" infant on the back of the head. However, no reasonable officer could interpret the Plaintiff's statement as anything but exculpatory *i.e.* she was attempting to comfort a crying baby. Cherry-picking a single line from a deposition without giving that statement context is an improper method of attempting to create an undisputed record. *Brown v. Navarro*, 09-cv-3814, 2012 U.S. Dist. LEXIS 76719, at *12-14 (N.D. Ill. June 4, 2012). As discussed above, there was no probable cause to believe the Plaintiff caused any bodily harm to Infant because there were no injuries that could be linked to the Plaintiff. As to the issue of whether there was probable cause to believe the Plaintiff made physical contact of an insulting and provoking nature, once again, one must look at the context of the patting to the

7

back of the head, *i.e.* she was a nurse comforting a crying baby. Context matters when it comes to asserting whether touching is "insulting and provoking" under Illinois law. *People v. d'Avis*, 250 Ill. App. 3d 649, 651 (1993); also compare *People v. Craig*, 46 Ill. App. 3d 1058 (where the hospital security guard was found not to have committed a battery based on "insulting and provoking" physical contact where he took a camera out of someone's hands based on a hospital regulation that photography was not permitted) with *People v. DeRosario* 397 Ill. App. 3d 332 (2009) (where the defendant sat behind the victim and his knees touched her body, and the context of this otherwise innocuous touching mattered because the defendant had been stalking the victim after they broke up).

      Context matters here, too. Officer Wooden knew the Plaintiff was caring for Infant and knew the video and another witness supported her version of events, *i.e.*, that the side of his crib slipped, startling Infant and causing him to cry (SAMF ¶¶ 12, 31). Furthermore, a reasonable officer must also consider whether that the statute requires that a defendant act with a criminal purpose, as here, where one must act "knowingly.[2]" "[P]robable cause does not exist without evidence that the defendant acted culpably." *Overton*, supra, 2008 U.S. Dist. LEXIS 47186, at *32 (citing *BeVier*, 806 F.2d at 126-128); see also *Gottlieb v. Richards*, 01-cv-3522, 2002 U.S. Dist. LEXIS 18092, at * 15 (N.D. Ill. Sept. 25, 2002). Thus, even if one credits Defendant Williams' slapping allegation, there would be no probable cause to conclude the Plaintiff was doing so to the back of the head of a crying baby with the conscious purpose of causing bodily harm or to insult or provoke the baby. In the end, where there is room for a difference of opinion as to the reasonableness of an officer's probable cause decision, this is a matter best left to the

---

[2] A person acts "knowingly" in committing a battery when "he is consciously aware that his conduct is practically certain to cause the result." *People v. Willette*, 2015 IL App (4th) 130702, ¶ 50 (aggravated battery to a child); *People v. Miller*, 199 Ill. App. 3d 603, 607-08 (Ill. App. 1990) (simple battery).

province of a jury. *Brown*, supra, 2012 U.S. Dist. LEXIS 76719, at *11 (citing *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)).

II. **Officer Wooden's motion for summary judgment on the Plaintiff's unlawful pre-trial detention claim should be denied because a reasonable trier of fact could conclude Officer Wooden did not have probable cause to continue to detain the Plaintiff without probable cause.**

An unlawful pre-trial detention claim, sometimes referred to as a "*Manuel* claim," based on the 2017 United States Supreme Court's decision in *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017), is a relatively new Section 1983 tort action in the Seventh Circuit, since before *Manuel* was decided, the Seventh Circuit took the position that a Fourth Amendment claim necessarily ceased to exist upon the occurrence of a *Gerstein* hearing. See, e.g., *Newsome v. McCabe*, 256 F.3d 747, 750-52 (7th Cir. 2001). In *Manuel*, a pair of Joliet police officers pulled over the plaintiff, and, among other things, found a bottle of pills on the plaintiff. *Manuel*, 137 S.Ct. at 915. The police officers did a preliminary field test, which came back negative for any controlled substance, "leaving the officers with no evidence that Manuel had committed a crime." *Id*. Still, the officers arrested the plaintiff, and at the police station, once again, an evidence technician tested the pills and got the same negative result. *Id*. However, the technician and police officers lied in their reports, claiming the pills most likely contained an illegal drug, specifically Ecstasy. *Id*. The plaintiff was held over in county jail for over a month before charges were dismissed. *Id*. The plaintiff waited too long to bring a false arrest claim, however, he alleged his continued detention past his *Gerstein* hearing was illegal. The case eventually was decided by the United States Supreme Court, where the Court held a Fourth Amendment claim can extend beyond the initial arrest. In so doing, the Court held:

> [P]retrial detention can violate the Fourth Amendment not only when it proceeds, but also when it follows, that start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence

9

> of probable cause (citation omitted). That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong – when, for example, a judge's probable cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. *Id*. at 918-919.

Similarly, here, the Plaintiff was detained and held in custody beyond the *Gerstein* hearing, even though there was no probable cause to charge her with aggravated battery for allegedly causing great bodily harm, or even bodily harm, to Infant, since there was no medical evidence or other evidence to support these charges. A *Manuel* claim is based on a loss of liberty due to false charges, and that liberty certainly includes her being incarcerated on false felony aggravated battery charges that were later dropped on the day of trial; in other words, this claim is charge-specific, especially where, as here, the Plaintiff can demonstrate harm from being charged with a felony rather than a misdemeanor. *Roldan v. Town of Cicero*, 17-cv-3707, 2019 U.S. Dist. LEXIS 51013, at *12 n. 5 (N.D. Ill. March 27, 2019); see also *Daniels v. Gladstone*, 16-cv-190, 2019 U.S. Dist. LEXIS 128167 (E.D. N.Y. July 31, 2019) (in analyzing a Section 1983 malicious prosecution claim,[3] the court found the probable cause analysis must be charge-specific). Pretrial detention can violate the Fourth Amendment not only at its inception, but also when it causes detention past a *Gerstein* hearing. The facts in the present case clearly show that Officer Wooden caused the Plaintiff to be charged with serious felonies for which there was no probable cause, and the Plaintiff was held in custody thereafter for several more days as a result, this depriving he of her liberty. Officer Wooden claims the indictment is prima facie evidence of probable cause (Def. Mem. 10). First, this rule does not apply here because the Plaintiff's *Manuel* claim is based on her continued detention *before* the grand jury indictment. Moreover,

---

[3] Since the Second Circuit, before and after *Manuel*, styled their pre-trial detention claim one involving "malicious prosecution," it is the equivalent of a pre-trial detention claim, at least as to the probable cause element, since both claims are grounded in the Fourth Amendment. *Dettis v. Sharburgh*, 919 F.3d 161, 164 (2d Cir. 2019) (citing pre-*Manuel* cases).

10

Officer Wooden acknowledges that this rule does not apply where a defendant "misrepresented, withheld, or falsified evidence in procuring it." *Id*. Officer Wooden's false testimony to the grand jury satisfies this standard. The Plaintiff's *Manuel* claim should go forward.

   **III. Officer Wooden cannot invoke qualified immunity because he never pled this affirmative defense in his Answer. Alternatively, he is not protected by qualified immunity.**

In his Answer, Officer Wooden did not raise the affirmative defense of qualified immunity (Dkt. 20). A court is within its discretion to rule a defendant waives such an offense, absent good cause shown, and a court is also within its discretion to presume prejudice, as is the case here, for forcing a plaintiff to address an affirmative defense in a summary judgment motion that was never actually raised in an answer. *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744 (6th Cir. 2015); see also *Mitchell v. City of Chi.*, 862 F.3d 583, 587 (7th Cir. 2017); and *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Finally, to the extent that Officer Wooden is contemplating seeking a tardy amendment, a court may deny a motion to amend if the proposed amendment would be futile. *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008); *King ex rel. King v. East St. Louis School Dist.* 189, 496 F.3d 812, 815-819 (7th Cir. 2007); *see also Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). Thus, the Plaintiff's next section addresses the issue of futility as intertwined a merits response to Officer Wooden's qualified immunity argument.

The doctrine of qualified immunity shields from liability public officials who perform discretionary duties. However, "the qualified immunity doctrine does not protect those who act unreasonably or who knowingly violate the law." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1014 (7th Cir. 2006). "A plaintiff may discharge the burden of showing that the constitutional right was clearly established by showing that there is 'a clearly analogous case

establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.' " *Id*. (citing *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Here, there is both. The duty of an officer to conduct a reasonable investigation and to make an arrest only upon probable cause was clearly established at the time of this incident. See, e.g., *Be Vier*, supra, 806 F.2d at 128 (and see also the cases cited in the Plaintiff's probable cause section of this Memorandum). Moreover, any reasonable officer would know that charging a nurse with causing serious injuries to a child her care, in the face of medical evidence to the contrary, and then then lying under oath at a grand jury about those injuries,[4] was forbidden by the Constitution. An officer who acts in this manner cannot invoke qualified immunity. *Overton*, supra, 2008 U.S. Dist. LEXIS 47186, at *37 (citing *Newsome v. McCabe*, 256 F.3d 747, 752-53 (7th Cir. 2001); and *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988)).

Finally, Officer Wooden never claims that he should be entitled to qualified immunity based on the prosecutor approving felony charges, and based on the prosecutor approving of his perjury by asking a false, leading question at the grand jury that resulted in Officer Wooden committing perjury. Having failed to raise this argument, it should be deemed waived. *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996). Nor would such an argument be successful in any event because no reasonable officer would have proceeded with the aggravated battery charges in the wake of the undisputed medical evidence. Qualified immunity does not apply where it is obvious to a reasonable officer that charges should not have been brought, even where

---

[4] The Plaintiff cannot make witness perjury the sole basis of her federal claim (*Rehberg v. Paulk*, 566 U.S. 356 (2012)) and she does not. Instead, the Plaintiff bases her false arrest claim on the absence of probable cause for her arrest, and her *Manuel* claim is based on a lack of probable cause to detain her. The grand jury perjury came afterward, which is part of the basis of her state law malicious prosecution claim, as there is no such immunity under state law. *Rodgers v. People's Gas, Light & Coke Co*., 315 Ill. App. 3d 340, 346-47 (Ill. App. 2000). In any event, giving false testimony to a grand jury can be used as a reason to reject to qualified immunity. *Overton*, supra, 2008 U.S. Dist. LEXIS 47186, at *37.

12

such actions are approved by judges or prosecutors, who are immune actors. *Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014) (citing *Malley v. Briggs*, 475 U.S. 335 (1986) and *Messerchmidt v. Millender*, 565 U.S. 535 (2012)). In any event, as discussed above, Officer Wooden waived his qualified immunity defense by never raising it in his Answer.

**IV. Officer Wooden's motion for summary judgment on the Plaintiff's malicious prosecution claim should be denied because a reasonable trier of fact conclude Officer Wooden did not have probable cause to continue to charge the Plaintiff with two counts of aggravated battery against a child, and that he acted with malice in doing so.**

Officer Wooden concedes that the Plaintiff has presented sufficient evidence on three of the malicious prosecution elements; he only takes issue with the absence of probable cause, and the presence of malice (Def. Mem. 10). In analyzing state law malicious prosecution claims, a court must look the issues in a charge-specific manner, as opposed to a federal claim of false arrest, which is based on existence of probable cause for any criminal offense. *Roldan v. Town of Cicero*, 17-cv-3707, 2019 U.S. Dist. LEXIS 51013 (N.D. Ill. 2019) (citing (*Holmes*, supra, 511 F.2d at 682). The Defendant claims that, under Illinois law, "A person 'commits battery if he or she makes physical contact without legal justification.'" 720 ILCS 5/12-3 (Def. Mem. 11). This is *not* the definition of a misdemeanor battery. Instead, "A person commits battery if he or she knowingly, without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 2019). Thus, the Plaintiff can proceed on her malicious prosecution claim if there was a lack of probable cause for either the felony charges, or the misdemeanor charge, or both. The Plaintiff was falsely charged with, *inter alia*, a Class X felony based on causing a child serious bodily harm when there was no evidence to support this charge. This caused the Plaintiff to be held in Jail several days longer than had she been charged with a misdemeanor; to pay a

13

greater bond, and to have the case drag on for two years. This is so even if this Court were to find there was probable cause to charge the Plaintiff with a misdemeanor, even though there was not, as argued extensively above. In any event, the Plaintiff was also harmed by having this misdemeanor charge go to trial, as this put her in jeopardy of being convicted of a crime and spending up to a year in jail.

The Plaintiff is not going to extensively re-iterate the basis for the lack of probable cause as to these charges. Based on the Plaintiff's argument regarding the false arrest/probable cause analysis, incorporated her by reference, there was simply no probable cause to believe that the Plaintiff caused bodily harm or great bodily harm to Infant. The medical evidence is uncontroverted on this issue. As far as the misdemeanor offense, the Plaintiff refers this Court to the false arrest/probable cause analysis above for further elaboration as to why no probable cause existed to charge the Plaintiff with misdemeanor battery. Moreover, under Illinois law, probable cause is normally a question for the jury where, as here, factual differences and inferences exist. *Salmen v. Kamberos*, 206 Ill. App. 3d 686, 691 (Ill. App. 1990).

As to the issue of malice, this is normally an issue for the trier of act to determine. *Frye v. O'Neill*, 166 Ill. App. 3d. 963, 977-78 (Ill. App. 1988). A jury is entitled to find that Defendant Officer charged the Plaintiff with serious felonies based on the Plaintiff causing Infant bodily harm and great bodily harm, knowing the doctors all agreed there was no evidence to support this, and he further lied to the grand jury about the doctor's findings. Moreover, as the Defendant admits, a trier of fact may infer malice from the absence of probable cause (Def. Mem. 12); see also *Salmen*, supra, 206 Ill. App. 3d at 691.

    **V.**    **Defendant Williams' motion for summary judgment on the Plaintiff's malicious prosecution claim should be denied because a reasonable trier of fact could find that she acted with malice in falsely accusing the Plaintiff of slapping an infant baby in her care.**

Defendant Williams's actions were the direct cause of the Plaintiff's criminal prosecution. But for her telling Officer Wooden that the Plaintiff "slapped" Infant three times, the State could have never prosecuted the Plaintiff. Defendant Williams' story is contradicted by the video evidence, the Plaintiff, and another witness, all of which a jury would be entitled to use to conclude that she lied to police about what occurred, and thus no probable cause existed to charge the Plaintiff with battery or aggravated battery. If a jury were to credit the Plaintiff's version of events, then it would be entitled to believe Defendant Williams lied. This would indicate Defendant Williams acted with malice, since she lied about the nature of the slapping. See *Salmen*, supra, 206 Ill. App. 3d at 691; see also *Rodgers*, supra, 315 Ill. App. 3d at 346. Finally, Defendant Williams makes much of the fact that there was no personal animus between her and the Plaintiff before this incident, but she fails to cite any authority for the proposition that this matters, or that it prevents a jury from finding malice.

## CONCLUSION

WHEREFORE, the Plaintiff respectfully requests this Honorable Court deny the Defendants' Motion for Summary Judgment.

Respectfully Submitted,

/s/ Richard Dvorak
One of the attorneys for the Plaintiff.

Richard Dvorak
Mariam Hai
*Dvorak Law Offices, LLC*
6262 Kingery Highway
Willowbrook, IL 60527
P: (630) 568-3190
F: (312) 873-3869
richard.dvorak@civilrightsdefenders.com
mariam.hai@civilrightsdefenders.com

15

## **CERTIFICATE**

    I, Richard Dvorak, an attorney, certify that on March 19, 2020, I caused the above document to be delivered to counsel of record in the captioned case through this courts electronic filing system.

                                                          s/ Richard Dvorak